599 S.E.2d 795

**Brenda BRUM, Virginia Law and Cheryl Cottrill, Petitioners Below, Appellants**

v.

**The BOARD OF EDUCATION OF WOOD COUNTY, a Statutory Corporation, Respondents Below, Appellee.**

No. 31596.

Supreme Court of Appeals of West Virginia.

Submitted March 30, 2004.

Decided June 17, 2004.

Joseph P. Albright, Jr., Bradley & Albright, Parkersburg, for Appellants.

Dean A. Furner, Spilman, Thomas & Battle, L.L.C., Parkersburg, for Appellee.

PER CURIAM:

This is an appeal by Brenda Brum, Virginia Law and Cheryl Cottrill, who are school teachers, from a decision of the Circuit Court of Wood County which affirmed the denial of grievances which they had filed with the Board of Education of Wood County. In their grievances, they claimed that the Board of Education of Wood County had improperly transferred them from positions which they held in the Wood County school system during the 2001–2002 school year. They specifically claimed that the transfers were improperly finalized before they were given an appropriate opportunity to be heard.

## I.

### FACTS

The appellant, Brenda Brum, was a librarian at Parkersburg High School during the 2001–2002 school year. On or about March 6, 2002, she was notified that she was being considered for an involuntary transfer. At the time, the Board of Education of Wood County had what is commonly referred to as a "bump policy." That policy authorized certain personnel with seniority and appropriate qualifications, such as Ms. Brum, to "bump" another person in the school system, or to take the position of another individual who had less seniority.[1] The bumping process

---

1. The "bump policy" of the Wood County Board of Education was technically embodied in Board Policy 4119, which provided, in relevant part:

> If applicable, the overage personnel shall have the choice of being placed on the transfer work list or being rescheduled to another position within the school of his/her present assignment. In order to remain assigned to his/her present school, the overage person must accept the position, if any, held at the school by the

provided a person, with seniority, some choice in job placement when the person was being involuntarily transferred within the school system.

It appears that Ms. Brum did not wish to be transferred from her librarian position, but if a transfer was unavoidable, she wanted some choice as to where she would work. She, therefore, on March 13, 2002, pursuant to the "bump policy," filed a "Professional Transfer Request Form" requesting that she be transferred to an English teaching position at Parkersburg High School. At the time of the request, the English teaching position was held by Cheryl Cottrill, another of the appellants in the present proceeding.

Because Ms. Brum actually wished to retain her librarian position at Parkersburg High School, rather than be transferred to any other position, on March 18, 2002, she instituted proceedings challenging her involuntary transfer, and she subsequently requested a protest hearing on the proposed involuntary transfer from the librarian position.

On March 26, 2002, before final action was taken on Ms. Brum's protest to her involuntary transfer, the Board of Education of Wood County approved Ms. Brum's "voluntary" request for a voluntary transfer pursuant to the "bump policy." It, in effect, ruled that during the following teaching year she would be assigned to the English teaching position at Parkersburg High School previously held by Cheryl Cottrill. On the following day, March 27, 2002, Ms. Brum was notified that a protest hearing pursuant to her challenge to the involuntary transfer would be held on April 16, 2002. The hearing was, in fact, held on April 16, 2002, and at the conclusion of the hearing, the Board of Education of Wood County affirmed Ms. Brum's transfer to the English teaching position.

The case of appellant Virginia Law is quite similar to that of appellant Brenda Brum. During the 2001–2002 school year, Ms. Law was hired as a Title I teacher at Waverly Elementary School. On March 6, 2002, she was notified that she was being considered

for an involuntary transfer. Ms. Law, like Ms. Brum, did not wish to be transferred, but if a transfer was inevitable, she preferred to have some choice as to her future position, so like Ms. Brum, she challenged her involuntary transfer and filed a request for a voluntary transfer pursuant to the "bump policy." Ms. Law, unlike Ms. Brum, initiated protest proceedings challenging the involuntary transfer prior to requesting a voluntary transfer pursuant to the "bump policy."

As in the case of Ms. Brum, the Board of Education of Wood County approved the voluntary transfer of Ms. Law pursuant to the "bump" request prior to conducting a hearing on the involuntary transfer. As in the case of Ms. Brum, a hearing was held on the involuntary transfer after the voluntary transfer was approved, and following the hearing, the voluntary transfer was upheld.

Procedurally, both Ms. Brum and Ms. Law filed grievances, and Ms. Cottrill, who was being bumped by Ms. Brum at Parkersburg High School, intervened. The cases were consolidated at the administrative level and considered together.

In their grievances, the appellants claimed that their rights were prejudiced when their transfers were, in effect, approved before they were afforded appropriate protest hearings on the involuntary transfers. Implicit in their positions is the assertion that appellants Brum and Law would not have requested transfers pursuant to the "bump policy" had they not previously been informed that they were going to be involuntarily transferred. Also implicit in their positions is the assertion that it was their desire to remain in their original positions in the event that the involuntary transfers were inappropriate.

The Board of Education of Wood County initially denied the appellants' grievances, and the cases ultimately were heard by an administrative law judge who concluded that the evidence showed that they appellants were afforded transfer hearings as required by law, and that even though the hearings were conducted after the voluntary requests pursuant to the "bump policy" had been ap-

person with the least seniority in all of the

overage person's fields of certification.

proved, the appellants rights were not prejudiced.

The circuit court affirmed this decision, and it is from the circuit court's order that the appellants now appeal.

## II.

### STANDARD OF REVIEW

 Recently, in Syllabus Point 1 of *Cahill v. Mercer County Board of Education,* 208 W.Va. 177, 539 S.E.2d 437 (2000), this Court ruled that:

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Further, W. Va.Code 18-29-7 indicates that the decision of hearing examiner should be final unless it is contrary to the law or exceeds the hearing examiner's statutory authority or is the result of fraud or deceit, or is clearly wrong in view of the reliable, probative and substantial evidence of the record as a whole, or is arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

## III.

### DISCUSSION

West Virginia Code 18A-2-7 provides, in part, that:

(a) The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter. However, an employee shall be notified in writing by the superintendent on or before the first Monday in April if he is being considered for transfer or to be transferred.... Any teacher or employee who desires to protest such proposed transfer may request in writing a statement of the reasons for the proposed transfer. Such statement of reasons shall be delivered to the teacher or employee within ten days of the receipt of the request. Within ten days of the receipt of the statement of the reasons, the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education. The hearing on the proposed transfer shall be held on or before the first Monday in May. At the hearing, the reasons for the proposed transfer must be shown.

 In *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979), the Court stated that school personnel regulations and laws are to be strictly construed in favor of the employee. In Syllabus Point 2, the Court concluded that: "W. Va.Code, 18A-2-7 provides for notice and hearing before an employee's placement on a transfer or reassignment list is approved by a board of education. It must be complied with strictly." When the statutory provisions were not strictly complied with, the Court concluded that it is appropriate that personnel transferred be removed from the transfer and reassignment list. In effect, failure to comply with the notice and hearing requirements requires the setting aside of a challenged transfer.

In *Lavender v. McDowell County Board of Education,* 174 W.Va. 513, 327 S.E.2d 691 (1984), a school superintendent approached a board of education concerning the proposed involuntary transfer of an employee prior to notifying the employee of the transfer and of the rights which he had relating to the transfer. In the *Lavender* case, the Court stressed that it was intended that a county board of education conduct a detached and independent hearing on the reasons for a proposed involuntary transfer before rendering a decision upon it. The Court stated: "... due process requires that such a hearing be conducted only after due notice to the employee and in such a manner as to guaran-

tee that the employee has an opportunity to present his position to the board. As we stated in *Morgan v. Pizzino,* 163 W.Va. at 458, 256 S.E.2d at 595, '[i]f a decision has already been made, and the employees have been prejudged the process is meaningless.'" *Lavender v. McDowell County Board of Education,* at 516, 327 S.E.2d at 694. In the *Lavender* case, the Court went on to state that the law requires that a superintendent not submit an employee's name for proposed transfer, or for other action to the board of education, or discuss such action with the board, until after the superintendent has notified the employee directly and has afforded him an opportunity to request a hearing before the board. A logical extension of this is that a board of education should not rule upon the transfer until the employee has had the opportunity to be heard.

 In the present case, appellants Brum and Law were notified of their pending involuntary transfers for the following school year. That notification triggered the rights provided by W. Va.Code 18A–2–7, and the Court believes, in line with the holdings and reasoning in *Morgan v. Pizzino, supra,* and *Lavender v. McDowell County Board of Education, supra,* that once the notices were given, it was inappropriate for the superintendent or the board of education to approve the transfer of the appellants until all of the provisions of W. Va.Code 18A–2–7 had been complied with. In effect, it was inappropriate, once the appellants had protested the involuntary transfers pursuant to the provisions of W. Va.Code 18A–2–7, for the board of education to approve their voluntary transfers pursuant to the "bump policy," until after the protest proceedings on the involuntary transfers had been completed.

To rule otherwise, in this Court's opinion, would allow county boards of education "bump" policies to take precedence over the statutory and constitutional provisions discussed in *Morgan v. Pizzino, supra,* and *Lavender v. McDowell County Board of Ed-*

*ucation, supra,* and to avoid the procedural requirements of those provisions.[2]

For the reasons stated, this Court believes that the Circuit Court of Wood County erred in affirming the administrative law judge's decisions in the present case, and that the appellants should be restored to their 2001–2002 positions in the Wood County school system. The Court also believes that it is appropriate that the appellants be awarded attorney fees as authorized by statute, and that the costs of the present action be assessed against the Board of Education of Wood County.

Reversed and remanded.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge KAUFMAN, sitting by temporary assignment.

---

**2.** In reaching this conclusion, the Court, in no way, finds that the "bump" policy in question, or "bump" policies in general, are inappropriate. The Court believes that they potentially provide useful and desirable alternatives to boards of education and employees for dealing with necessary changes in personnel structure. However, they must not be used in such a way as to deprive employees of the rights afforded by W. Va.Code 18A–2–7.